**Alice LEMAR, Brian Lemar, and Alice Lemar as Next Friend of Sarah Lemar, Plaintiffs,**

v.

**UNITED STATES of America, American Cyanamid Company, Inc., Connaught Laboratories, Inc. and Connaught Laboratories, Ltd., Defendants.**

Nos. 82–2817–M, 83–2403–M.

United States District Court, W.D. Tennessee, W.D.

Feb. 8, 1984.

---

1. We also note that while Missouri law applies to this transaction, federal regulations governing the release of FmHA liens are narrowly drawn to maintain the government's security interest in the proceeds from the sale of the collateral. See 7 C.F.R. § 1962.17(b) (1983).

Robert K. Kaufman, Gaylor, Mich., for plaintiffs.

Robert Fargarson, J.W. McDonnell, Jr., J. Minor Tait, Jr., Paul Goodman, Memphis, Tenn., and Brenda Green, U.S. Dept. of Justice, Civil Div., Washington, D.C., for defendants.

## ORDER ON UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT

McRAE, Chief Judge.

Plaintiffs bring this action under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, *et seq.*, for injuries received by their daughter, Sarah Lemar, after she was immunized against various diseases. The government has moved to dismiss, *Fed.R. Civ.P.* 12(b)(1) and (6), or, in the alternative, for summary judgment, *Fed.R.Civ.P.* 56.

Alice and Brian Lemar, at the recommendation of their pediatrician, took their daughter, Sarah, to be immunized at a local school. The immunizations were performed by personnel of the Memphis and Shelby County Health Department. The vaccines were purchased by the State of Tennessee from private pharmaceutical manufacturers. Sarah, on March 5, 1980 and May 21, 1980, received the following vaccines: diptheria and tetanus toxoids with pertussis vaccine, absorbed and Sabin trivalent oral poliovirus vaccine. At the time of the vaccinations, the parents did not receive any literature discussing the risks or providing warnings of possible side effects. The Center for Disease Control publishes an "Important Information Form" providing certain warnings, but its distribution is not mandatory when the vaccines are not bought by the federal government. Soon after immunization, Sarah displayed severe symptoms of infantile spasm syndrome, a neurologic illness, which plaintiffs claim was caused by the immunizations.

Plaintiffs' theory of recovery against the government is wholly predicated upon the "good Samaritan" doctrine. *Indian Towing Company, Inc. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). They claim that once the government gratuitously assumed the duty to advise the public to be immunized, it also took on the duty to render this advice in a careful, non-negligent, manner. Specifically, plaintiff alleges that the government advised the public, medical profession and plaintiffs to be immunized, but negligently exaggerated the benefits and understated the risks of vaccine-related injury and death.

The government raises two grounds to absolve itself of liability. First, that the immunization program is an exempt, discretionary function, and second, that the government owed no duty to the plaintiffs.

As a sovereign, the government may only be sued when it gives its consent; and that consent limits the parameters of any action it allows to be brought. *United States v. Orleans*, 425 U.S. 807, 813–14, 96 S.Ct. 1971, 1975–76, 48 L.Ed.2d 390 (1976). The FTCA is but a limited waiver of that immunity. *Id.* at 813, 96 S.Ct. at 1975. Within the limits of the FTCA, the government is liable in tort "in the same manner and to the same extent as a private individual under like circumstances …." 28 U.S.C. § 2674. The FTCA, however, precludes a recovery based on:

Any claim based upon an act or omission of the Government exercising due care, in the execution of a statute or regulation, whether or not such regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). This discretionary function exception was recognized by the Supreme Court in *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). In *Dalehite*, the government, in order to feed the war ravaged nations of Germany and Japan, produced and shipped Fertilizer Grade Ammonium Nitrate. The fertilizer, which could also be used as an explosive, detonated, destroying the port of Texas City, Texas. One of the issues was that the fertilizer bags were negligently marked as they did not warn of the danger of explosion. *Id.* at 39, 41, 73 S.Ct. at 969, 970. The Court held that even the labels were within the discretion of the government and it was thus not liable. This *almost absolute view* was somewhat limited in *Indian Towing Company, Inc. v. United States*, 350 U.S. at 64, 76 S.Ct. at 124, where the Court distinguished between the "planning level" and the "operational level" of discretion. The Court held that once a policy decision entered the "operational level", the government would be liable for its negligent implementation. *Id.* at 64, 76 S.Ct. at 124.

■ The government contends that its stated policy to immunize as many children against the diseases for which Sarah Lemar was vaccinated is just that—a "planning level" policy. Plaintiffs contend that the circulation of posters and media kits pushing the immunization "propaganda" is "operational level" and that this was negligently performed.

"Operational level" policy includes certain affirmative actions, e.g., building a dam, military base or giving air traffic control directions. The "operational level" in the instant case was the buying, distribution and administering of the vaccines. Each one of these functions was carried out by state and local government, however, not by the United States. The planning level was the determination of the policy itself, and making that policy known.

Even if this Court held that the government acted at the "operational level", plaintiffs would not prevail on the merits of the "good Samaritan" theory.

■ Plaintiffs rely on *Indian Towing* where the Supreme Court said:

[I]t is hornbook tort law that one who undertakes to warn the public of danger, and thereby induces reliance must perform his "good Samaritan" task in a careful manner. 350 U.S. at 64–65, 76 S.Ct. at 124.

The FTCA will allow an action only where state law would allow such an action. *Raymer v. United States*, 660 F.2d 1136, 1139 (6th Cir.1981). As the injury occurred in Tennessee, the law of that state will be applied. The Tennessee Court of Appeals, in *Nidiffer v. Clinchfield Railroad Co.*, 600 S.W.2d 242, 246 (Tenn.App.1980), cited Justice Cardozo's oft quoted holding in *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275, 276 (1922), that if one acts gratuitously, he assumes a duty to act carefully, which gave rise to the Restatement of Torts Rules §§ 323, 324A. Also cited is *Prosser, Law of Torts* § 56 (4th ed. 1971), which applies Restatement Rule § 323.

This Court believes that faced with a situation similar to this case, a Tennessee court would apply the Restatement formulation.

■ The essential element for recovery under § 324A [1] and the "good Samaritan" rule is reliance. In *Indian Towing*, the formulation included inducing reliance. *Id.* at 65, 73 S.Ct. at 124. *Patentas v. United States*, 687 F.2d 707, 715 (3rd Cir.1982) (applying § 324A); *Raymer v. United States*, 660 F.2d 1136, 1143 (6th Cir.1981) (applying § 324A, reliance is key to liability).[2]

In the affidavits and depositions submitted by the government, and not contested by plaintiffs, the Lemars never saw nor relied on any of the allegedly negligent information publicized by the government. They never were handed an Important Information Form, they never saw any posters, advertisements or any other printed material distributed by the government.

Accordingly, the government contends that under *Fed.R.Civ.P.* 56, there is no issue of fact contested and, thus, summary judgment is appropriate. Plaintiffs, however, contend that even if they failed to demonstrate any reliance, summary judgment is not appropriate because a material fact is still at issue—that the medical profession was lulled into a mistaken belief by the government that the vaccines were innocuous.[3]

■ This contention fails as a matter of law because there is a failure of showing proximate cause. Without some showing of a proximate causal connection between the allegedly negligent action and the injury, *Pearle v. Canady*, 373 S.W.2d 617, 620, 52 Tenn.App. 343 (1963), there can be no recovery. Plaintiffs may not assert in their action wrongs which may have occurred to others. The proximate cause of Sarah's injury will not stretch to include some alleged negligent action to a profession as a whole where the Complaint lacks any suggestion of a causal connection.

Accordingly, defendant United States of America's Motion for Summary Judgment is granted. The government's appeal from the Magistrate's Order of November 22, 1983 denying a protective order, is dismissed as moot.

IT IS SO ORDERED.

---

1. *Restatement (Second) Torts* § 324A states:
   *Liability to Third Person for Negligent Performance of Undertaking.* One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
   (a) his failure to exercise reasonable care to protect his undertaking, if
   (b) he has undertaken to perform a duty owed by the other to the third person, or
   (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

2. Clauses (a) and (b) of § 324A do not apply in this action. Under clause (a), the defendant must have increased the risk by making some physical change to the environment or some other material alteration of the circumstances. *Patentas v. United States*, 687 F.2d at 717. This clearly does not apply. Clause (b), undertaking a duty owed by another, is not alleged.

3. Clause 9 of the Complaint states:
   THAT the damages sustained by all plaintiffs were a proximate result of the negligence of Defendant, UNITED STATES OF AMERICA, consisting of malfeasance in its gratuitously assumed duty to advise the public at large, and your plaintiffs in particular and the medical profession of the risks and benefits of vaccination by exaggerating the benefits and understating the risks of vaccine-related injury and death.